1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| STEVE KASSAB, | Case No. 07-cv-01071-BAS(JLB) |
| Plaintiff, | **ORDER:** |
| | **(1) DENYING PLAINTIFF'S MOTION FOR NEW TRIAL OR ALTERNATIVELY FOR AMENDMENT OF THE JUDGMENT  (ECF NOS. 280, 281, 282, 283); AND** |
| v. | |
| SAN DIEGO POLICE DEPARTMENT, *et al.*, | |
| Defendants. | **(2) GRANTING *EX PARTE* MOTION TO FILE LATE RESPONSE BRIEF (ECF NO. 288)** |

21       Presently before this Court is a motion filed by plaintiff Steve Kassab

22 ("Plaintiff") for a new trial or, alternatively, for amendment of the judgment (ECF No.

23 280, 281, 282, 283).  Plaintiff commenced this civil rights action on June 12, 2007.

24 From March 3, 2015 through March 6, 2015, a jury trial was held on the only

25 remaining issue in the case: whether defendants Skinner and Hernandez (collectively

26 "Defendants") used excessive force by subjecting Plaintiff to excessive heat during

27 his arrest on July 13, 2006.  (*See* Pretrial Order, ECF No. 232 at pp. 1-2.)  On March

28 6, 2015, the jury returned a verdict in favor of Defendants and judgment was entered

accordingly.  (*See* Jury Verdict, ECF No. 272; Judgment, ECF No. 275.)  Plaintiff now moves for a new trial, or alternatively for amendment of the judgment, on several grounds.  Defendants oppose (ECF No. 289).[1]

The Court finds this motion suitable for determination on the papers submitted and without oral argument.  *See* Civ. L.R. 7.1(d)(1).  For the reasons set forth below, Plaintiff's motion for a new trial or, alternatively, for amendment of the judgment is **DENIED.**

# I.    BACKGROUND

On June 12, 2007, Plaintiff commenced this action against the San Diego Police Department, City of San Diego, City Attorney's Office, and several police officers. The First Amended Complaint ("FAC"), the operative complaint, was filed on April 25, 2008 alleging a violation of (1) California Civil Code § 51 *et seq*., (2) false arrest and false imprisonment in violation of 42 U.S.C. § 1983 (incorporating unlawful search and seizure in violation of 42 U.S.C. § 1983), (3) assault/threat and intimidation/retaliation in violation of 42 U.S.C. § 1983, (4) intentional infliction of emotional distress, and (5) excessive force in violation of 42 U.S.C. § 1983.  (ECF No. 49.)

Defendants filed a motion for summary judgment on October 17, 2008.  (ECF No. 81.)  On September 22, 2009, the Court granted Defendants' motion for summary judgment in its entirety.  (ECF No. 123.)  The Court granted summary judgment on

---

[1]    Defendants moved *ex parte* for an extension of time to file an opposition due to an internal calendaring error.  (ECF No. 288.)  Plaintiff filed an opposition, arguing inexcusable untimeliness.  (ECF No. 290.)  Federal Rule of Civil Procedure 59(c) states that "[w]hen a motion for new trial is based on affidavits, . . . [t]he opposing party has 14 days after being served to file opposing affidavits."  Fed. R. Civ. P. 59(c).  Plaintiff's motion for a new trial is not based on affidavits.  Therefore, Plaintiff's opposition, filed on May 15, 2015, was not subject to the 14 day rule.  *See Anderson v. Thompson*, 144 F.R.D. 393, 395 (E.D. Wash. 1992).  Even if the Court were to consider it subject to the 14 day rule, Rule 59(c) is subject to Federal Rule of Civil Procedure 6(b), and the Court finds good cause for an extension of time.  *Id.* Accordingly, Defendants' *ex parte* motion is **GRANTED**.

Plaintiff's causes of action brought under 42 U.S.C. § 1983 for assault/threat and intimidation/retaliation, unlawful arrest without probable cause, and unlawful search and seizure, finding they are barred by *Heck v. Humphrey*, 512 U.S. 475 (1994) because they seek to attack the validity or duration of Plaintiff's confinement, for which the exclusive remedy is a writ of habeas corpus.  (*Id.* at pp. 5-7.)  The Court also granted summary judgment on Plaintiff's excessive force claims against the individual officer defendants, finding they are entitled to qualified immunity, and on Plaintiff's excessive force claims against the entity defendants, finding they are immune from suit under the *Monell* doctrine.  (*Id.* at pp. 7-11.)  The Court declined to exercise supplemental jurisdiction over the state law causes of action.  (*Id.* at pp. 11-12.)

On October 16, 2009, Plaintiff filed a Notice of Appeal.  (ECF No. 125.)  On appeal, the Ninth Circuit affirmed in part and reversed in part the Court's summary judgment order.  (ECF No. 140.)  The Court reversed on Plaintiff's excessive force claim against the individual officers.  In reversing, the Ninth Circuit stated:

> The district court also granted summary judgment on Kassab's excessive force claim against the individual officers alleging that he was subjected to excessive heat.  The district court concluded that qualified immunity applied because the force used was *de minimus* and because it was not clearly established that the officers' conduct violated the Fourth Amendment.
>
> However, in his verified amended complaint and his declaration in opposition to summary judgment, Kassab stated that he was detained in a police car for more than four hours, with the windows rolled up, no air conditioning, and an interior temperature of 115 degrees. According to his sworn statements, Kassab suffered from heat stroke, had difficulty breathing, and almost passed out several times.  These facts, viewed in the light most favorable to Kassab, create a triable dispute as to whether defendants used excessive force.  *See Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004) ("[W]hen an officer's conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established." (citation and

– 3 –

internal quotation marks omitted)); *Jackson v. City of Bremerton*, 268 F.3d 646, 651 & n.1 (9th Cir. 2001) (discussing factors for determining whether the force used was excessive, and stating that the test for reasonableness is often a jury question).

Accordingly, we reverse summary judgment on Kassab's claim as to the individual officers and remand for further proceedings.

(*Id.*)

After the Ninth Circuit's order was issued, the defendants moved to dismiss all parties except for defendant officers Skinner and Hernandez and to limit the issues to be tried. The Court granted the motion and dismissed all parties except for defendant officers Skinner and Hernandez. (ECF No. 181.) The Court further limited the trial to the excessive force claim that allegedly took place on July 13, 2006. (*Id.*)

Starting on March 3, 2015, the Court held a 4-day jury trial on Plaintiff's excessive force claim. The jury returned a verdict in favor of Defendants and the Court entered judgment accordingly. (*See* ECF Nos. 272, 275.)

## II.   LEGAL STANDARD

Rule 59 of the Federal Rules of Civil Procedure permits the Court to alter or amend a judgment, or order a new trial. *See* Fed. R. Civ. P. 59(a), (e). Rule 59 does not specify specific grounds for new trial, but a court is bound to grant a new trial for "grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). The grounds on which such motions have been granted include "claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Molski*, 481 F.3d at 729 (citation and internal quotations omitted); *see also Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n. 15 (9th Cir. 2000). In addition, such motions may be granted where the verdict "is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino*, 212 F.3d at 510 n. 15; *see also Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 762 F.3d

829, 842 (9th Cir. 2014) ("[T]he district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice.").

"Upon the Rule 59 motion of the party against whom a verdict has been returned, the district court has the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski*, 481 F.3d at 729 (internal quotations and citation omitted). However, "a district court may not grant a new trial simply because it would have arrived at a different verdict." *Wallace v. City of San Diego*, 479 F.3d 616, 630 (9th Cir. 2007) (quoting *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 818 (9th Cir. 2001)) (internal quotation marks omitted). With respect to evidentiary rulings, "[a] new trial is only warranted when an erroneous evidentiary ruling substantially prejudiced a party." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008) (quotation and citation omitted).

## III.   DISCUSSION

### A.   Improper Dismissal of Defendants

Plaintiff argues a new trial is warranted because the Court improperly dismissed both the City of San Diego and Catherine Millet as defendants "without permitting Plaintiff the discovery necessary to establish that Officer Millet was a proper defendant . . . and that the City's policies and procedures have been to tolerate and cover up such activity on the part of its officers sufficient to render the City as a public entity liable for the damages stemming from Plaintiff's excessive force claim." (ECF No. 280 at p. 12.) Plaintiff claims this presented Plaintiff "with an 'empty chair' dilemma which greatly prejudiced his case." (*Id.*)

Plaintiff's argument that a new trial is warranted because the City of San Diego and Catherine Millet were improperly dismissed is unavailing. Plaintiff does not identify which discovery ruling of the Court prejudiced his case. However, to the extent he argues this Court improperly denied his requests to re-open discovery as to

07cv01071

the City of San Diego and Catherine Millet on the eve of trial for the purpose of establishing they were proper defendants, such a ruling was not an abuse of discretion and Plaintiff has failed to demonstrate any prejudice.  *See Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) ("Broad discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant.").  Only one claim for excessive force remained for trial against the two officer defendants who Plaintiff alleged committed the excessive force.  The Court's Pretrial Order permitted Plaintiff to call Ms. Millet and several police officers, including supervisory officers, with the City of San Diego, as witnesses at trial to the extent they had testimony regarding the alleged excessive force that occurred on July 13, 2006.  (*See* ECF No. 232 at pp. 7-8.)  Although Plaintiff did not call Ms. Millet as a witness during trial, Defendants called her as a witness and Plaintiff had an opportunity to cross-examine her on the witness stand.

To the extent Plaintiff argues the Court improperly denied discovery as to the City of San Diego and Catherine Millet in connection with the filing of Defendants' motion for summary judgment, Plaintiff had an opportunity to raise that issue when he appealed the Court's order granting Defendants' motion for summary judgment. *See Qualls By and Through Qualls v. Blue Cross of Cal., Inc*., 22 F.3d 839 (9th Cir. 1994) (abuse of discretion review of district court's decision not to permit further discovery to oppose a summary judgment motion).  The Ninth Circuit did not address such an argument in its Order, and after appeal, the single issue that remained for trial did not include claims against the City of San Diego or Catherine Millet.  (*See* ECF No. 140.)  As Plaintiff has failed to demonstrate the Court abused its discretion and any resulting prejudice, the Court **DENIES** Plaintiff's request for a new trial on the grounds the City of San Diego and Catherine Millet were improperly dismissed as defendants.

///

**B.     Subpoenas**

Plaintiff also argues he is entitled to a new trial because the Court denied him "the necessary subpoena power (including refusing him his rightful fee waiver for issuing subpoenas for witnesses pre-trial)."  (ECF No. 280 at p. 7.)  On January 9, 2015, Plaintiff filed an Application for Waiver of Additional Court Fees and Costs. (ECF No. 229.)  Plaintiff requested that the Court waive the following fees: (1) jury fees and expenses; (2) court-appointed interpreters' fees for witnesses; (3) witness fees of peace officers whose attendance is necessary; (4) reporters' fees for attendance; (5) witness fees for court-appointed experts; (6) certification and copying; (7) transcript fees; (8) issuing process and certification; (9) sheriff and marshal fees; (10) telephone appearance fees; and (11) transmittal of papers.  (*Id*. at pp. 1-2.)  He asked the Court to extend his *in forma pauperis* status to cover all court fees and costs associated with his trial.  (*Id*.)  Plaintiff also requested that the U.S. Marshals "serve the witnesses to appear and testify at trial."  (*Id*. at p. 2.)

As the Court explained in its order denying his request, the Court does not require jury fees, reporters' fees for attendance at trial, or telephonic appearance fees, and the Court does not provide interpreters in civil matters.  (ECF No. 234 at p. 2.) With regard to witness fees, the Court stated in its order:

> The fact that Plaintiff is proceeding *pro se* and *in forma pauperis* pursuant to 28 U.S.C. § 1915 neither excuses Plaintiff's requirement to pay the witness fees nor provides funds for the Court to pay the witness fees.  *Tedder v. Odel*, 890 F.2d 210, 211 (9th Cir. 1989) (finding that 28 U.S.C. § 1915 "does not permit a waiver of the witness fees"); *Dixon v. Ylst*, 990 F.2d 478, 480 (9th Cir. 1993).  While a district court may order service of subpoenas on Plaintiff's witnesses by the United States Marshals, a court cannot waive payment of the fees or expenses for those witnesses.  *Tedder*, 890 F.2d at 211; *Pitts v. Davis*, 2014 WL 4635464, at * 14 (E.D. Cal. Sept. 15, 2014); 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties" for a plaintiff proceeding *in forma pauperis*).

(*Id*. at pp. 2-3.)

While the Court denied Plaintiff's request to pay or waive witness fees, the

– 7 –

Court did direct the U.S. Marshals Service to effect service of Plaintiff's trial subpoenas upon receipt of each properly completed trial subpoena directed to a witness listed in the Pretrial Order and a money order made payable to each witness for the full amount of the witness's travel expenses plus the daily witness fee of $40 pursuant to 28 U.S.C. § 1821. (*Id.* at p. 3.) In his motion for a new trial, Plaintiff does not establish that he presented the U.S. Marshals Service with properly completed trial subpoenas. Moreover, he does not identify any authority indicating the Court erred in its analysis or demonstrate that the Court's order prejudiced his ability to present his case at trial thereby causing a miscarriage of justice. *See Passantino*, 212 F.3d at 510 n. 15. Accordingly, Plaintiff's motion for a new trial is on the grounds that the Court refused Plaintiff the necessary subpoena power is **DENIED**.

### C.    Ulterior Motives

Next, Plaintiff argues a new trial is warranted because the Court "repeatedly permitted Defendants to discuss Plaintiff's alleged sale and conviction for sale of 'narcotics paraphernalia' without permitting Plaintiff to introduce counter-evidence" of his innocence. (ECF No. 280 at p. 10.) In short, Plaintiff argues that the Court's rulings "barred Plaintiff from discussing his guilt or innocence" but "defense counsel was permitted to elicit testimony from Plaintiff as to his jail sentence and time, and the documentary evidence submitted by Defendants repeatedly asserted criminal behavior on Plaintiff's part (e.g. the arrest report)." (*Id.*)

Prior to trial, Plaintiff filed a motion *in limine* for an order "instructing the Defendants not to mention, refer to, interrogate concerning, or attempt to convey to the jury in any manner whatsoever, either directly or indirectly, anything about" his criminal case. (ECF No. 240 at p. 2.) He further moved for an order "requiring Defendants to inform any witnesses they intend to call on their behalf to refrain from making any reference to or comment about that lawsuit." (*Id.*) At the hearing on the parties' motions *in limine*, the Court granted Plaintiff's motion, precluding both sides from mentioning Plaintiff's criminal case, including the original allegations and the

jury verdict, as well as Plaintiff's pending habeas petition, unless the door was opened by Plaintiff. (*See* ECF No. 258.) In addition, the Court ordered that the reason behind the search warrant being effected at the time of the arrest, and what the officers were looking for during the search, be excluded. (*Id.*)

During the trial, however, Plaintiff repeatedly mentioned the nature of the search and charges, argued that the search was unlawful, and elicited testimony that he ran a lawful business. After Plaintiff's own testimony, defense counsel requested a side bar and argued that Plaintiff had violated the Court's order and opened the door to being cross-examined on the nature of the criminal charges against him, and the fact that he was convicted, he appealed the conviction, and the conviction was affirmed by the court of appeals. Because Plaintiff opened the door, the judge permitted defense counsel to ask such questions.

Evidence of a crime is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Civ. P. 404(b)(2). Here, the Court initially determined that evidence of Plaintiff's conviction should be excluded under Federal Rule of Civil Procedure 403 because its probative value was substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. However, the Court cautioned that Defendants could inquire into the conviction if Plaintiff opened the door. *See Torres v. Johnson Lines & N.Y.K. Lines*, No. 85-3513-RJK, 1989 WL 87085, at *2 (C.D. Cal. Feb. 21, 1989) ("A party may not complain about the introduction of evidence where he himself opens the door.") (citing *United States v. Helina*, 549 F.2d 713, 719 (9th Cir. 1977)). A party opens the door to detailed cross-examination on a prior conviction when he attempts to "explain away" the conviction by offering his own version of the underlying facts. *United States v. Perry*, 857 F.2d 1346, 1352-53 (9th Cir. 1988) (citing *United States v. Amahia*, 825 F.2d 177, 180 (8th Cir. 1987); *United States v. Barnes*, 622 F.2d 107, 109 (5th Cir. 1980); *United States v. Wolf*, 561 F.2d 1376, 1381 (10th Cir. 1977)); *see also United States v. Robinson*, 8 F.3d 398, 410 (7th

Cir. 1993). When Plaintiff attempted to explain away his conviction and argue his innocence, he opened the door to cross-examination on the issue. Defense counsel's questioning did not improperly "harp on [Plaintiff's] crime, parade it lovingly before the jury in all its gruesome details, and thereby shift the focus of attention from the events at issue in the present case to [Plaintiff's] conviction in a previous case." *Robinson*, 8 F.3d at 410. Accordingly, the Court finds defense counsel did not improperly elicit testimony on Plaintiff's prior conviction.

To the extent Plaintiff argues he was not permitted to introduce counter-evidence of his innocence, his innocence was not on trial. The sole issue before the Court was whether the officer defendants used excessive force in arresting Plaintiff on July 13, 2006. In his motion, Plaintiff argues his innocence was in fact on trial and that the entire trial should have been continued until Plaintiff's habeas petition, also before this Court, was resolved. However, a finding in this action that Defendants used excessive force would not render Plaintiff's conviction or sentence invalid, and therefore, the claim is not *Heck*-barred. *See Smithart v. Towery,* 79 F.3d 951, 952-53 (9th Cir. 1996) (finding where "a successful section 1983 action for excessive force would not necessarily imply the invalidity of [a plaintiff's] arrest or conviction, *Heck* does not preclude [the plaintiff's] excessive force claim."); *Sanford v. Motts*, 258 F.3d 1117, 1119–20 (9th Cir. 2001) (explaining that a successful § 1983 suit based on excessive force would not necessarily imply the invalidity of a plaintiff's conviction because the officer's use of excessive force occurred subsequent to the conduct for which Plaintiff was convicted).[2] Accordingly, the Court did not err in precluding Plaintiff from introducing evidence and testimony of his innocence in this trial, and the Court's determination that he could not do so did not prejudice him at trial and lead to a miscarriage of justice. *See Passantino*, 212 F.3d at 510 n. 15; *Harper*, 533

---

[2]     The Court previously denied Plaintiff's request to stay this matter pending a determination on his Petition for Writ of Habeas Corpus. (*See* ECF No. 214.)

1  F.3d at 1030.

2         Plaintiff also argues a new trial is warranted because the Court improperly

3  "permitted Defendants to introduce the arrest report[3] and discuss their pre-arrest

4  preparations and states of mind, while excluding all evidence for Plaintiff as to the

5  officers' possible ulterior motives for using punitive excessive force against Plaintiff

6  (e.g. the judgment Plaintiff had just obtained against SDPD and the internal affairs

7  investigation's finding that an officer had in fact told Plaintiff 'what comes around

8  goes around')."  (ECF No. 280 at p. 9, 13-17.)[4]  In the FAC, Plaintiff alleges the search

9  warrant was conducted "in retaliation for a previous lawsuit filed by the plaintiff

10  against the City of San Diego."  (FAC at p. 27; *see also* ¶¶ 33, 36.)  In support of this

11  allegation, Plaintiff alleges an officer, during the search, stated "just remember what

12  goes around comes around."  (*Id*.)  In granting summary judgment, the Court found

13  that Plaintiff's retaliation claim was barred by *Heck*.  (ECF No. 123 at pp. 5-7.)  The

14  Ninth Circuit affirmed the district court's granting of summary judgment on Plaintiff's

15  "§ 1983 claims concerning the searches of his store, his arrest, and his prosecution

16  because these claims are *Heck*-barred."  (ECF NO. 140 at p. 2.)

17         In pretrial hearings, Plaintiff argued his retaliation claim was still viable, now

18  arguing that the officers placed him in a hot car as retaliation.   In the Pretrial Order,

19  the Court stated: "Plaintiff may not call witnesses whom he claims did not witness the

20  arrest and would only testify that Defendants' use of excessive force was in retaliation

21  for other actions that occurred prior to July 13, 2006.  The danger of unfair prejudice,

22  confusing the issues, misleading the jury, and undue delay would greatly exceed the

23  limited probative value of this testimony."  (ECF No. 232 at p. 8.)

24  _____

25         [3]    The search warrant and arrest report were marked as exhibits for
26  identification, but were not admitted into evidence.  (*See* ECF No. 269.)
         [4]    Plaintiff also argues the Court improperly excluded exhibits and
27  witnesses "who could have authenticated same and/or discussed their relevancy for
   the limited purposes of speaking to defendant's possible ulterior motives."  (ECF No.
28  280 at p. 13.)

As the Supreme Court states in *Graham v. Connor*, 490 U.S. 386 (1989), in evaluating an excessive force claim in violation of the Fourth Amendment:

> [T]he question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, **without regard to their underlying intent or motivation**. *See Scott v. United States*, 436 U.S. 128, 137–139, 98 S.Ct. 1717, 1723–1724, 56 L.Ed.2d 168 (1978); *see also Terry v. Ohio, supra*, 392 U.S., at 21, 88 S.Ct., at 1879 (in analyzing the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard"). **An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional**. *See Scott v. United States, supra*, 436 U.S., at 138, 98 S.Ct., at 1723, citing *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

*Id*. at 397 (emphasis added); *see also Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994). The Supreme Court further states in *Graham* that "consideration of whether the individual officers acted in 'good faith' or 'maliciously and sadistically for the very purpose of causing harm,' is incompatible with a proper Fourth Amendment analysis." *Id*. Several courts, in interpreting *Graham*, have further held that any claims of retaliation are irrelevant to a Fourth Amendment excessive force analysis. *See Foster v. Metro. Airports Com'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) (finding allegations that officers' rough conduct towards plaintiff was in retaliation for tearing up his parking ticket were irrelevant to a Fourth Amendment claim of excessive force after *Graham*).

Therefore, the Court did not err in excluding evidence during the trial of retaliation for the purpose of establishing a Fourth Amendment violation. *See Harper*, 533 F.3d at 1030. To the extent Plaintiff argues the Court improperly excluded evidence of retaliation for the purpose of establishing punitive damages, as the jury did not find liability on the claim, the issue is moot. Accordingly, the Court **DENIES** a motion for new trial on these grounds.

///

**D.    Continuances**

Although this case commenced in 2007, as trial approached in 2015, Plaintiff requested several continuances, some of which the Court denied.  Plaintiff now argues the Court's refusal during the Pretrial Conference to grant a continuance of the trial "to permit discovery to establish the relevancy and scope of witnesses' testimony in the lead-up to pretrial conferences and motions in limine" caused him prejudice and that, as a result, he was not afforded "substantial justice and a full and fair trial." (ECF No. 280 at pp. 8-9.)  Plaintiff also argues that the Court's refusal to continue the trial to accommodate Plaintiff's expert witness and refusal to grant a continuance the morning of trial based on a family health emergency was prejudicial.  (*Id.* at pp. 10-12.)

**1.    Requested Continuance to Re-Open Discovery**

"The denial of a continuance is within the broad discretion of the trial court." *United States v. 2.61 Acres of Land, More or Less, Situated in Mariposa Cnty., State of Cal.*, 791 F.2d 666, 670 (9th Cir. 1985).  Four factors are deemed salient in considering whether a continuance should be granted: (1) the diligence of the party requesting the continuance, (2) whether the purpose of the continuance will be achieved, (3) inconvenience to the court, opposing parties, and witnesses, and (4) prejudice to the requesting party caused by the denial of the continuance.  *Id.* at 671 (citing *United States v. Flynt*, 756 F.2d 1352, 1359 (9th Cir. 1985)).  "A district court's decision regarding a continuance is given great deference, and will not be disturbed on appeal absent clear abuse of the court's discretion."  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001) (internal quotation omitted); *see also 2.61 Acres of Land*, 791 F.2d at 671.

A district court's decision to deny a continuance sought for the purposes of obtaining discovery will be disturbed only "upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Sablan v. Dep't of Fin.*, 856 F.2d 1317, 1321 (9th Cir. 1988).  "Prejudice is measured

1   in terms of the outcome of the trial; in other words, is there a reasonable probability

2   that the outcome would have been different had the continuance been allowed."

3   *Martel v. Cnty. of Los Angeles*, 56 F.3d 993, 995 (9th Cir. 1995).  However, where

4   "the denial of a continuance of the proceeding directly affects a defendant's ability to

5   present evidence," the less stringent prejudice test articulated in *Flynt* applies.  *United*

6   *States v. Mejia*, 69 F.3d 309, 318 n. 11 (9th Cir. 1995).

7       In his pretrial disclosures, Plaintiff listed over sixty (60) witnesses.  (*See* ECF

8   No. 225 at pp. 8-32.)  During the Pretrial Conference, Plaintiff represented that the

9   following witnesses, in addition to himself and Defendants, observed his arrest on July

10   13, 2006, *i.e.*, they witnessed the events surrounding Plaintiff's remaining excessive

11   force claim: (1) Joandark Kassab, (2) George Kassab, (3) Sheila Swartout; (4) Samir

12   Shamoon; (5) Victoria Robinson, (6) Joe Wright, (7) Mikini Hammond, (8) Sergeant

13   Parga, (9) Detective Millet, (10) Officer Needham, (11) Detective Steward, (12)

14   Detective John Davis, (13) Sergeant Stachnik, (14) Detective Derrough, (15)

15   Investigator Hawkins, (16) Richard Buffkin, and (17) Vicky Jackson.  All of these

16   individuals were added to the Pretrial Order as witnesses Plaintiff may call at trial.

17   (ECF No. 232 at pp. 7-8.)  Four of these individuals – Sergeant Stachnik, Detective

18   Derrough, Investigator Hawkins, and Sheila Swartout – were later excluded on a

19   motion *in limine* because it was determined they were not present during the arrest.

20       During the Pretrial Conference, Plaintiff stated that he did not personally know

21   all of the witnesses listed in his pretrial disclosures, but was only aware of their names

22   and presence on the scene because they were listed in police reports.  Therefore,

23   Plaintiff asked the Court to bring the potential witnesses into court and have them

24   testify so that he could learn what they knew about the case and determine their

25   relevance to the trial.  In short, Plaintiff was asking the Court to conduct belated

26   discovery on his behalf.  Because Plaintiff had an opportunity to conduct discovery in

27   this case and the discovery period had long been closed, the Court denied his request.

28       While Plaintiff did not expressly request a "continuance" during the Pretrial

07cv01071

Conference to re-open discovery, to the extent his request could liberally be construed as a request for a continuance, the Court weighed the *Flynt* factors and denied his request. Plaintiff had an opportunity to conduct discovery, the discovery deadline had long passed, and there was no showing of why the information he sought could not have been obtained during the discovery process. Moreover, after eight years, the case was on the eve of trial, and the Court and Defendants had an interest in finally resolving this matter. Lastly, it was clear Plaintiff would not be prejudiced by the denial because during the Pretrial Conference Plaintiff was able to identify thirteen (13) percipient witnesses of the events at issue on July 13, 2006.

Given the foregoing, the Court finds that it did not abuse its discretion in denying the continuance. *See 2.61 Acres of Land*, 791 F.2d at 670-71; *Mejia*, 69 F.3d at 318 n. 11. Accordingly, the Court **DENIES** Plaintiff's motion on this ground.

### 2.  Additional Continuance Requests

During the motion *in limine* hearing on February 9, 2015, Plaintiff advised the Court that his father was in the hospital and requested a forty-five (45) day continuance. At the end of the hearing, the Court continued the trial from February 17, 2015 to March 3, 2015. On February 26, 2015, Plaintiff filed an *ex parte* application seeking a ninety (90) day continuance of the trial, due in part to the serious illness of his father, who he claimed was "an essential witness in the trial" and would not be available for the trial, and the unavailability of Dr. Jacqueline Acevedo Gonzalez, MD. (ECF No. 263 at p. 2.) On March 2, 2015, Defendants filed an opposition to the *ex parte* application. (ECF No. 264.) Defendants did not object to continuing the trial due to Plaintiff's father's illness; however, they maintained the remaining grounds submitted by Plaintiff do not constitute good cause. (*Id.* at p. 3) With respect to Dr. Gonzalez, Defendants argued that her unavailability was irrelevant because Plaintiff had not listed her on his pretrial disclosures and she was never disclosed as an expert witness and did not submit a report. (*Id.* at p. 4.)

On March 3, 2015, the Court denied Plaintiff's *ex parte* motion. The Court

07cv01071

highlighted the fact discovery had long been closed, and expressed concerns about the age of the case and its long history of delays.  With respect to Plaintiff's father's illness, the Court declined to continue the trial again on this basis, noting there was no affidavit from a doctor or any indication that Plaintiff's father was in ICU, or how long he would be there and whether ninety (90) days would even cure the issue. Moreover, Plaintiff had identified numerous other witnesses who were present during his arrest.[5]   Therefore, the unavailability of Plaintiff's father would not unduly prejudice his case.  The Court also denied the request based on the unavailability of Dr. Gonzalez, as she was not previously disclosed nor listed in the Pretrial Order.

a.    *Medical Expert*

In seeking a new trial, Plaintiff argues he was prejudiced because Defendants were "permitted to introduce uncontroverted medical evidence."  (ECF No. 280 at p. 11.)  At trial, Defendants were permitted to call Dr. Vilke, a board-certified emergency department physician with substantial experience in heat related illnesses, as an expert witness to testify that the evidence does not support Plaintiff's claim that he suffered a heat-related illness or heat stroke on July 13, 2006.  (*See* ECF No. 255 at pp. 3-4.) However, Defendants timely disclosed Dr. Vilke as an expert witness and provided Plaintiff with a report.

Plaintiff was not permitted to call Dr. Gonzalez as an expert witness, not because of her unavailability, but because she was not previously disclosed as required by Federal Rule of Civil Procedure 26 and the Court's Scheduling Order, nor was she listed in Plaintiff's pretrial disclosures or the Pretrial Order.[6]  *See Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 369 (9th Cir. 1985) ("The district court is given broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the

---

[5]    Defendants represent that Plaintiff's father "did not arrive on the scene until after [Plaintiff] was removed from the police car."  (ECF No. 289 at p. 8.)

[6]    It appears the first time Plaintiff identified Dr. Gonzalez was the week prior to trial.  (*See* ECF No. 263 at p. 13.)

preclusive effect of a pretrial order."); *see also* Fed. R. Civ. P. 37(c); ECF No. 211 (failure to comply with expert disclosure requirements "may result in the sanctions provided for in Fed. R. Civ. P. 37, including a prohibition on the introduction of experts or other designated matters in evidence).

Accordingly, the Court did not err in excluding Dr. Gonzalez as an expert witness and Plaintiff's motion for a new trial on this ground is **DENIED**.[7]

### b.   *Father's Medical Condition*

Plaintiff also argues that the Court's refusal to grant him a continuance based on his father's medical condition severely prejudiced his trial preparation because he "needed to be available at all times in this period to authorize emergency medical care for his father." (ECF No. 280 at p. 11.)  For the reasons stated in the Court's earlier denial of Plaintiff's request for a continuance due to his father's illness, the Court did not abuse its discretion in refusing to grant the continuance.  Plaintiff also fails to demonstrate that his trial preparation was prejudiced by his need "to be available," if necessary, to authorize emergency medical care, thereby necessitating a new trial to prevent a miscarriage of justice.

Plaintiff's father was in a local San Diego area hospital.  (*See* ECF No. 263 at p. 12.)  Therefore, although Plaintiff does not state that his presence was required during pretrial preparations, he was nearby if needed.  Moreover, through his *pro se* filings and appearances in Court, before and during trial, Plaintiff demonstrated a strong familiarity with the facts and documents in the case.  Since the case commenced in 2007, Plaintiff, with the assistance of four different attorneys, and on his own, had

---

[7]       Moreover, Dr. Gonzalez's proposed testimony did not rebut Dr. Vilke's testimony, but rather discussed the long term effects on Plaintiff of the alleged excessive force.  (ECF No. 276.)  Therefore, even if Plaintiff had been permitted to call Dr. Gonzalez as a witness, Dr. Vilke's testimony would still have been uncontroverted by an expert witness.  In addition, Dr. Gonzalez's testimony only went to damages.  As the jury found no liability, Dr. Gonzalez's proposed testimony was irrelevant and there was no prejudice.

1   conducted discovery, briefed a summary judgment motion, and prepared for a
2   settlement conference.   Therefore, Plaintiff was not learning the case from the
3   beginning.   The trial was also very limited in length and scope, with only one issue
4   and each side limited to ten hours.   Given the foregoing, the Court does not find that
5   going forward with the trial was unfair to Plaintiff or that a new trial is warranted to
6   prevent a miscarriage of justice.   *See Passantino*, 212 F.2d at 510 n. 15.

7        **E.      Time for Trial**

8        Plaintiff argues that the Court "allotted only 10 hours of time for the trial, which
9   was in no way sufficient to present the case fairly to the jury."   (ECF No. 280 at p.
10  11.)   "Trial courts have broad authority to impose reasonable time limits."   *Navellier*
11  *v. Sletten*, 262 F.3d 923, 941 (9th Cir. 2001).   "Such limits are useful to prevent undue
12  delay, waste of time, or needless presentation of cumulative evidence."   *Id*. (internal
13  quotation marks and citations omitted).   However, a court "must not adhere so rigidly
14  to time limits as to sacrifice justice in the name of efficiency."   *Id*. (citation omitted).

15       With only one limited issue remaining for trial, the Court limited each side to
16  ten (10) hours per side, including opening statement, closing argument, and all witness
17  testimony.   (*See* ECF No. 232 at p. 9.)   During the motion *in limine* hearing, the parties
18  discussed the time limit.   The Court represented that if a party felt they needed
19  additional time, the Court would be open to discussing it when the need arose.
20  Thereafter, the trial lasted approximately four days.   Plaintiff used most of his allotted
21  time, but did not request additional time during trial.   After his last witness, Plaintiff
22  represented that he was ready to proceed to closing argument.   The Court informed
23  Plaintiff he had thirty minutes left for closing argument and he did not object or argue
24  that he needed additional time.

25       In his motion for a new trial, Plaintiff has not indicated what additional evidence
26  he would have offered if provided more time.   Accordingly, the Court did not abuse
27  its discretion in imposing time limits.   *See Zivkovic v. Southern Cal. Edison Co*., 302
28  F.3d 1080, 1088 (9th Cir. 2002) (finding district court did not abuse its discretion in

imposing issue and time limitations where the plaintiff did not indicate what additional evidence he would have offered if provided more time); *Monotype Corp. v. Int'l Typeface Corp.*, 43 F.3d 443, 451 (9th Cir.1994) (holding district court's time limit reasonable, even though it provided significantly less time than a party estimated would be required, when the party did not argue how it was damaged by the time limits).  For the reasons stated above, the Court **DENIES** Plaintiff's request for a new trial on this basis.

## F.    Expert Testimony

Plaintiff argues Defendant's medical evidence was "ill-founded" in that he "based his testimony on the police report, he never examined Plaintiff and he did not review pertinent medical records of Plaintiff." (ECF No. 280 at pp. 10-11.)  Plaintiff moved to exclude Dr. Vilke, Defendants' medical expert, on a motion *in limine*, arguing his testimony was irrelevant, prejudicial, and unnecessary lay witness testimony. (*See* ECF No. 240 at pp. 3-4.)  Defendants intended to call Dr. Vilke, a board-certified emergency department physician, to testify in his medical opinion about heat related illnesses and how someone would have reacted if they had been left in a 115 degree car as Plaintiff alleged.  Defendants argued Dr. Vilke's testimony was relevant to the credibility of Plaintiff's rendition of the facts and damages. (*See* ECF No. 255 at p. 5.)  At the motion *in limine* hearing, the Court found this to be relevant and reliable expert testimony and, as Dr. Vilke was timely disclosed, denied Plaintiff's motion *in limine* to exclude Dr. Vilke. (*See* ECF No. 258.)

At trial, Defendants established Dr. Vilke's qualifications as an expert by knowledge, skill, experience, training, and education. *See* Fed. R. Evid. 702.  Dr. Vilke testified as to the documents he reviewed in forming his opinions and opined there was no evidence that Plaintiff had suffered any heat related illnesses on the date of his arrest, explaining the bases for his opinion.  Dr. Vilke did not claim he personally examined Plaintiff and Plaintiff had an opportunity to cross-examine him on his testimony.  Given the foregoing, the Court did not err in finding Dr. Vilke to

be qualified or in permitting him to testify. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151-52 (1999) (trial court is accorded wide discretion when acting as gatekeepers for the admissibility of expert testimony); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 978 F. Supp. 2d 1053, 1068-70 (C.D. Cal. 2013) (finding review of medical records and a collision report to be a sufficient factual basis for a medical expert's opinions); *See Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." (internal quotation marks and citation omitted).)   Accordingly, the Court **DENIES** Plaintiff's motion on this ground.

### G.   Weight of Evidence

Lastly, the Court has given a careful review to the evidence presented at trial. Based on such review, the Court cannot find that the jury's verdict is contrary to the clear weight of the evidence. *See Molski*, 481 F.3d at 729. Accordingly, Plaintiff's motion on this ground is **DENIED**.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' *ex parte* motion to file late response brief is **GRANTED**, and Plaintiff's motion for new trial or, alternatively, for amendment of the judgment (ECF No. 280-283) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  September 22, 2015**

Hon. Cynthia Bashant
United States District Judge

07cv01071